LORI RIFKIN – 244081
RIFKIN LAW OFFICE
P.O Box 19169
Oakland, California 94619
Telephone:   (415) 685-3591
Facsimile:    (510) 255-6266
Email: lrifkin@rifkinlawoffice.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| Nathaniel Smith,<br><br>        Plaintiff,<br><br>    v.<br><br>City of Stockton; Officer Patrick Mayer, Officer Robin Harrison, and Officer Michael Perez, in their individual capacities; and Chief of Police Eric Jones, in his official and individual capacities,<br><br>        Defendants. | Case No. 2:15-cv-00363-GEB-AC<br><br>**SECOND AMENDED COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u><br><br>(1) <u>Unreasonable and excessive force</u><br>(2) <u>Intentionally or recklessly provoking a confrontation</u> |

**JURISDICTION**

Plaintiff Nathaniel Smith complains and alleges as follows:

1.      This case challenges unreasonable and unjustified use of deadly force by officers of the Stockton Police Department ("SPD") that resulted in serious and needless injury to Plaintiff.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 in that this case arises under federal law and seeks damages for Defendants' violation of Mr. Smith's civil rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the U.S. Constitution and federal law.

## VENUE

3. Plaintiff's claims, alleged herein, arose in the County of San Joaquin, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2).

4. Pursuant to Rule 3 of the Federal Rules of Civil Procedure and Local Rule 120(d), assignment to this division is proper because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the counties served by this division.

## PARTIES

5. Plaintiff NATHANIEL SMITH is a 45-year-old African-American man who resided in Stockton, California at the time of the February 13, 2013 incident giving rise to this case. At the time of the incident described herein, Mr. Smith was 43 years old, and was the primary caretaker and sole custodian of his three-year-old son.

6. Mr. Smith has been incarcerated since the incident giving rise to this case, and is presently in the custody of the California Department of Corrections and Rehabilitation at California State Prison-Solano in Vacaville, California.

7. Defendant CITY OF STOCKTON is a municipality duly organized and existing under the laws of the State of California. The Stockton Police Department is a duly formed agency of the City of Stockton. Under its authority, Defendant City of Stockton is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the SPD and its respective employees and/or agents.

8. Defendant PATRICK MAYER was at all times relevant to the acts and omissions described herein an officer and employee of the Stockton Police Department. Defendant Mayer is sued in his individual capacity.

9. Defendant ROBIN HARRISON was at all times relevant to the acts and omissions described herein an officer and employee of the Stockton Police Department. Defendant Harrison is sued in her individual capacity.

10. Defendant MICHAEL PEREZ was at all times relevant to the acts and

omissions described herein an officer and employee of the Stockton Police Department. Defendant Perez is sued in his individual capacity.

11. Defendant ERIC JONES is currently, and was at all times relevant to the acts and omissions described herein, the Chief of Police for the Stockton Police Department, the highest position in the Department. As Chief of Police, Defendant Jones is responsible for oversight of SPD, including the training and supervision of SPD officers and maintaining, promulgating, and implementing policies and practices regarding the use of force and interaction with persons with disabilities by SPD officers. Defendant Jones is sued in his official and individual capacities.

12. At all times relevant to the allegations herein, each Defendant was acting in the course and scope of his or her employment and under color of state law.

### FACTUAL ALLEGATIONS

13. On February 13, 2013, Plaintiff was the passenger in the back seat of a car in Stockton, California.

14. At or around 12:00 p.m. (noon), Defendant SPD Officer Mayer, driving a marked police cruiser "K-9" unit, pulled his cruiser behind the car Mr. Smith was in while that car was stopped at a red light. When the light turned green, Defendant Mayer turned the cruiser's emergency lights on to signal the car in which Mr. Smith was a passenger to pull over. The driver of the car then pulled over just past the intersection.

15. On information and belief, Defendant Mayer had been following the car in which Plaintiff was a passenger at the direction of another SPD Officer, Defendant Harrison, who had been staking out a house the SPD had identified as Plaintiff's girlfriend's house. According to police reports, Defendant Harrison's assignment was the result of an outstanding warrant for Plaintiff's arrest on a felony DUI, and receipt of information by SPD that Plaintiff may be at that location. From an unmarked police car, Defendant Harrison watched a woman and a man she suspected but was not sure was Plaintiff leave the house, put a car seat into a car parked in front of the house, and get into the car. Defendant Harrison radioed this information to Defendant Mayer and they

1  planned to initiate a vehicle stop of the car to see if the man was actually Plaintiff.

2        16.    In order to get into position to conduct the vehicle stop, Defendant Mayer drove his marked police cruiser to a position behind the car in which Plaintiff was a passenger. Defendant Harrison positioned her unmarked police car behind Defendant Mayer's police cruiser.

      17.    On information and belief, neither Defendant Mayer nor Defendant Harrison had received any information indicating a probability that Plaintiff had a weapon, was likely to be violent or had engaged in recent violence, or posed a physical threat to any persons in the area.

      18.    After Defendant Mayer used his emergency lights to signal for the car to pull over, and the driver of the car did so, Defendant Mayer got out of the police cruiser, with his gun unholstered and in his hand.

      19.    Plaintiff, who was unarmed, then got out of the car. Defendant Mayer pointed his gun at Plaintiff and threatened Plaintiff that he was going to deploy his police canine.

      20.    Plaintiff, believing that Defendant Mayer was going to kill him, turned and ran away from the cars on foot. Plaintiff had recently expressed fears that the police were trying to kill him to his family members.

      21.    Defendant Mayer then deployed his police canine to chase Plaintiff, and Mayer and the dog pursued Plaintiff.

      22.    Plaintiff ran a short distance from the cars, up an embankment onto the freeway, crossed over to the other side, and then climbed and jumped over a chain link fence next to the freeway, landing at an "AM/PM" gas station. He saw a SUV at the tire air pump, and several young men near the SUV. Plaintiff asked one of the young men if he could get a ride down the street and offered to pay for gas. The young man agreed and Plaintiff got into the SUV through the rear right passenger door.

      23.    Meanwhile, Defendant Harrison had at first pursued Plaintiff on foot, but then returned to her unmarked police car and drove to the gas station, predicting Plaintiff

would end up there based on his flight pattern.

24. Defendant Harrison arrived at the gas station in time to see Plaintiff get into the SUV through the back door. Defendant Harrison stopped her car approximately twenty feet to the left side of the SUV, and got out of her car. She was wearing plainclothes with a vest with the word "Police" and had her gun drawn and pointed at the SUV.

25. At the time Plaintiff got into the SUV, another young man was still seated inside the SUV, who, on information and belief, had not heard the conversation between Plaintiff and his friend outside. That young man was confused by Plaintiff's appearance in the car and tried to physically restrain Plaintiff.

26. As or after Plaintiff got into the SUV, he saw Defendant Harrison get out of her unmarked car in police uniform.

27. At that point, a marked police car had also pulled up to the gas station, driven by Defendant SPD Officer Perez. Defendant Perez had not been dispatched to this incident, but had heard about it on his police radio and independently decided to respond. Defendant Perez had an individual he had already arrested in an unrelated incident in the back seat of his police car and was in the process of transporting that individual to the jail. According to police reports, that individual was loudly talking to Defendant Perez at the same time that information about the incident involving Plaintiff was going out over the radio.

28. It is not consistent with SPD protocol for an officer with an arrestee in his car to respond to radio traffic on another call or be dispatched to another call.

29. On information and belief, neither Defendant Harrison nor Perez had received any information indicating that Plaintiff might have a weapon or that Plaintiff had engaged in recent violence, or posed a threat to anyone in the area.

30. After the police officers appeared on the scene, at least one of the young men returned to the vehicle and joined his friend in physically restraining Plaintiff.

31. Plaintiff did not make any threats against the young men, and they succeeded in physically restraining him.

32. Defendant Harrison, approaching the SUV on foot with her gun pointed at the SUV, shouted for the young men to get out of the SUV. As they began to follow her direction, Defendant Harrison put her gun away and prepared to go to the SUV to use a "hands-on" approach to apprehend Plaintiff.

33. Meanwhile, Defendant Perez had jumped the curb with his police car, driven up onto the grass next to the gas station, parked in the grass approximately twenty feet to the rear and right of the SUV, and gotten out of the car. With his gun drawn, Defendant Perez ran past Defendant Harrison so that he crossed her path and then stopped near the driver's-side door of the SUV, with his gun pointed at Plaintiff. Defendant Perez was also shouting orders, so that both Defendant Harrison and Defendant Perez were both yelling different things at the same time.

34. On information and belief, the driver's-side door of the SUV was open. Both officers could see that at least part of Plaintiff's body was still in the back passenger section of the SUV and that his torso was and arms were over the center console of the SUV.

35. At least one of the officers shouted for Plaintiff to put his hands up. When Plaintiff raised his arms, Defendant Perez shot him.

36. Defendant Harrison, hearing a gunshot, grabbed her gun back out from where she had holstered it and started firing at the SUV.

37. At the time Defendants Perez and Harrison each fired their respective first shots, they were standing within two feet of each other.

38. Defendant Perez and Defendant Harrison fired a total of five shots at Plaintiff, three by Defendant Harrison and two by Defendant Perez.

39. Plaintiff was hit in his arm and chest and started bleeding immediately, such that blood was obvious on his body.

40. After Defendants Harrison and Perez shot and struck Plaintiff, Plaintiff did not move. Additional officers arrived at the scene and dragged Plaintiff fully into the back of the SUV and handcuffed him, and then dragged him from the SUV.

41.    Only after handcuffing Plaintiff did any SPD officers call for emergency medical responders.

42.    A search by SPD officers confirmed that Plaintiff was unarmed.

43.    One bullet hit Plaintiff in his chest and went through his diaphragm and his liver, causing a lacerated liver.  Another bullet went through his upper left arm, causing soft tissue damage.  Medical personnel had to insert a chest tube for drainage, and perform an emergency operation on Plaintiff to repair his liver and an emergency laparotomy (surgical procedure involving an incision through the abdominal wall).  In addition, the bullets had to be surgically removed from Plaintiff's body at a later time.  Following the initial operations, Plaintiff was treated for infection and fever.

44.    On information and belief, at the time he fired his gun, Defendant Perez did not know whether anyone other than Plaintiff was still inside the car nor where the young men that had been in and/or near the SUV were located.

45.    On information and belief, at the time Defendant Perez fired the first shot, the young men were barely clear of the inside of the SUV.

46.    At the time Defendants Perez and Harrison started firing at Plaintiff, neither officer was in the path of the SUV, nor was either officer's car in the path of the SUV.

47.    At no time during the incident did Plaintiff have control of the SUV and at no time during the incident did he drive the SUV or was the SUV otherwise moved.

48.    At no time during the incident did Plaintiff pose a threat of serious physical harm to Defendant officers or any other individual.

49.    On information and belief, neither Defendant Chief Jones nor any other SPD supervisor disciplined Defendants or take any corrective action with regard to the actions of Defendants in this incident.

50.    On information and belief, SPD has a significant history of problematic officer-involved shootings and excessive force in connection to vehicle stops, including the shooting and killing of an unarmed African-American man, Luther Brown Jr., and the beating and death of another unarmed African-American man, James Cooke, both in early

2012.

51. On information and belief, Defendant City of Stockton and Defendant Jones were aware of serious problems with SPD's use of force, including deadly force, in connection with vehicle stops, and failed to take appropriate actions to address and remediate these problems.

52. On information and belief, SPD does not adequately train its officers regarding legal standards for the use of force, including deadly force, against civilians nor adequately supervise its officers regarding reasonable and unreasonable use of force and deadly force.

53. On information and belief, SPD policies, procedures, and practices are inadequate to reasonably prevent officers from using excessive and/or unnecessary force including deadly force against civilians.

## CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

*Unreasonable and Excessive Use of Force*

*(Fourth and Fourteenth Amendments to U.S. Constitution and 42 U.S.C. § 1983)*

*Against Defendants Mayer, Harrison, Perez, City of Stockton, and Jones*

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as though fully set forth herein.

55. Defendant officers' threat of deadly force and use of force against Plaintiff was unnecessary, excessive, and unreasonable under the circumstances.

56. Defendant officers' unjustified threat of deadly force and use of deadly force deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments.

57. Defendant officers' unlawful use of force, including deadly force, caused Plaintiff extreme pain and suffering, both physical and mental.

58. Defendants City of Stockton and Chief of Police Jones permitted a policy, custom, and/or practice of conscious disregard of and reckless indifferent to constitutional rights.

59. The policy, custom, and/or practice of the SPD, under the authority of the City of Stockton and Chief of Police, was a cause of Plaintiff's injury because this policy, custom, and/or practice failed to provide adequate training, guidance, and supervision to officers with respect to constitutional limits on the use of force, failed to provide adequate discipline, training, corrective action, and supervision to officers with a propensity for violence or a history of violence and unreasonable use of force; and failed to provide adequate training and supervision to officers with respect to the appropriate procedures to be followed in dealing with mentally disturbed or agitated persons in need of medical or psychological treatment.

60. As a direct and legal result of Defendants' acts and omissions, Plaintiff suffered damages, including, without limitation, pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained.

61. The individual Defendants, by engaging in the aforementioned acts or omissions, engaged in willful, malicious, intentional, oppressive and despicable conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF

*Intentionally or Recklessly Provoking a Confrontation*

*(Fourth and Fourteenth Amendments to U.S. Constitution and 42 U.S.C. § 1983)*

*Against Defendants Mayer and Perez*

62. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63. Defendants, through their actions and omissions, intentionally or recklessly provoked a violent confrontation with Plaintiff.

64. Defendant Mayer's actions in conducting the initial traffic stop of the car in which Plaintiff was a passenger, including pointing his gun at Plaintiff and threatening to release and/or releasing his police canine on Plaintiff, intentionally or recklessly provoked

a confrontation with Plaintiff.

65. Defendant Perez's actions in responding to the incident at the gas station, including but not limited to brandishing his gun as he approached the SUV in which Plaintiff was located, pointing his gun at Plaintiff, shooting at Plaintiff, shouting instructions at the same time as Defendant Harrison, and failing to properly assess the threat posed by Plaintiff, intentionally or recklessly provoked a confrontation with Plaintiff.

66. Defendants' intentional or reckless provocation of Plaintiff violated his Fourth Amendment rights and created the situation that led to the use of deadly force against Plaintiff.

67. As a direct and legal result of Defendants' acts and omissions, Plaintiff suffered damages, including, without limitation, pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained.

68. Defendants, by engaging in the aforementioned acts or omissions, engaged in willful, malicious, intentional, oppressive and despicable conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

a. For compensatory, general and special damages, in an amount to be determined at trial;

b. For punitive damages against individual Defendants in an amount to be proven at trial;

c. For reasonable costs of this suit and attorneys' fees; and

d. For such further relief as the Court may deem just, proper, and appropriate.

//
//

## DEMAND FOR JURY

Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 201, Plaintiff demands trial by jury.

DATED: June 21, 2016        Respectfully submitted,

RIFKIN LAW OFFICE

By:  */s/ Lori Rifkin*
     Lori Rifkin

Attorney for Plaintiff