UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL SMITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF STOCKTON; et al.,<br><br>　　　　Defendants. | No.  2:15-cv-0363 KJM AC<br><br><br><br>ORDER |

Plaintiff, an unarmed African-American man, was shot and wounded by Stockton police officers on February 13, 2013, following a vehicle stop.  The parties have vastly different accounts of exactly how that shooting came about.  Plaintiff sues the City, the officers involved, and Chief of Police Eric Jones.

## I.   DISCOVERY SOUGHT

Plaintiff noticed the deposition of Chief Jones, and defendants have filed a Motion for a Protective Order seeking to prevent the deposition.  ECF No. 59.  The matter has been referred to the undersigned by E.D. Cal. R. ("Local Rule") 302(c)(1).

## II.   THE DISPUTE

Defendants move for a protective order under the "apex" doctrine, arguing that depositions of high-level "apex" witnesses are disfavored.  ECF No. 59-1 at 14-15 ¶ A.  They argue that Jones is an apex witnesses because, as the police chief of Stockton, the nation's 63rd

1

1 largest city, he is "an extremely busy person." Id.  They argue that plaintiff has not met his

2 burden to show that Jones has "unique knowledge" about the case, and that the information

3 plaintiff seeks cannot be obtained from other witnesses.  Id. at 16-17 ¶¶ B, C.

4     Plaintiff argues that this motion is governed by Fed. R. Civ. P. 26(c) ("Protective

5 Orders"), and that defendants have failed to meet their burden to show "good cause" why a

6 protective order should issue.  ECF No. 59-1 at 18-19 ¶ A.  He further argues that Jones has

7 "first-hand information" relevant to this case, and that he has already "exhausted" other means of

8 obtaining the evidence he seeks.  Id. at 19-24 ¶¶ B, C.

9     For the reasons set forth below, the motion will be denied.[1]

10         III.    MEET AND CONFER

11     The parties met and conferred by telephone on March 1, 2017, to no avail.  ECF No. 59 1

12 at 10 (defendants' statement), 12 (plaintiff's statement).

13         IV.    ANALYSIS

14     It is undisputed that this motion is governed by Fed. R. Civ. P. 26(c):

> A party or any person from whom discovery is sought may move for a protective order ….  The court may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ….

18 Fed. R. Civ. P. 26(c)(1) (emphasis added).  This rule places the burden on *defendants* – the

19 moving parties who seek to avoid the deposition – to show "good cause" why the deposition

20 should be denied:

> Under the liberal discovery principles of the Federal Rules defendants were required to carry a *heavy burden* of showing why discovery was denied.  They did not meet this burden.  On remand plaintiff, in the absence of a better showing, should be permitted to proceed with this deposition.

24 Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (emphasis added).  "[A] strong

25 showing is required before a party will be denied entirely the right to take a deposition."  Id.

---

[1] At oral argument, defendants suggested that the court might impose time limits on the deposition.  This matter was not included in the Joint Statement, and defendants have shown no basis for any such limitation.  Accordingly, the court will not consider the matter.

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210 11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Industries, Inc. v. Intl. Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (internal quotation marks omitted), cert. denied, 506 U.S. 868 (1992).[2]

The "apex" doctrine provides a framework for considering the Rule 26(c) "good cause" requirement in cases where, as here, the proposed deponent is a high-ranking government or corporate official.[3] The doctrine arises out of courts' observations that "deposition notices directed at an official at the highest level or 'apex' of corporate management … creates a tremendous potential for abuse or harassment." Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 WL 205067 at *3, 2007 U.S. Dist. LEXIS 8295 at *8 (N.D. Cal. 2007). The doctrine presumes that high-level officials delegate lower-level responsibilities, that they are more likely to be removed from the everyday activities of the organizations they lead, and that they are therefore less likely to have unique personal knowledge of the facts at issue in many lawsuit against their organizations. At the same time, it is more likely that others – closer to the action – will have the information relevant to most lawsuits. Accordingly, the "apex" doctrine shifts the initial Rule 26(c) burden from the person resisting discovery to the person seeking it. See, e.g., Avalos v. Baca, 2006 WL 6220447 at *1, 2006 U.S. Dist. Lexis 79376 at *3 (C.D. Cal. 2006) ("[h]eads of agencies and other top government executives are normally not subject to deposition").

In this case, there is no need to resolve who has which burden. Under either analysis, plaintiff is entitled to take Jones's deposition. That is because defendants have not met their burden if a traditional Rule 26(c) analysis is employed, while plaintiff has met his burden if an "apex" doctrine analysis is employed.

---

[2] Phillips and Beckman were both cases in which a newspaper sought access to court documents that were filed under a protective order. However, the Ninth Circuit applied Rule 26(c) and its "good cause" standard in resolving both cases.

[3] However, as defendants conceded at oral argument, the doctrine does not trump Rule 26(c) or the good cause requirement.

3

A. Annoyance or Harassment

Rule 26(c) does not, by its terms, authorize a protective order on the grounds that the requested deponent does not have "unique knowledge," or that other witnesses have not been deposed first. However, under traditional Rule 26(c) analysis, defendants may be entitled to a protective order if they can show that Jones's deposition is sought in order to annoy or harass, or for some other improper purpose. According to the case routinely cited for application of the "apex" doctrine, the doctrine was developed to avoid harassment of high-ranking officials or corporate officers:

> The "apex" doctrine exists in tension with the otherwise broad allowance for discovery of party witnesses under the federal rules. This judicially-created vehicle appropriately seeks to limit the potential for the discovery rules to serve as a tool for harassment.

Apple Inc. v. Samsung Elecs. Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012). A protective order might therefore be warranted if plaintiff wanted the deposition solely to obtain evidence that Jones does not have, or that is easily obtainable from others.

A purpose to harass or annoy could reasonably be inferred if Jones had shown that plaintiff already knows that Jones does not have any relevant, personal information about the facts at issue in this case. Jones had the opportunity to make this showing in the declaration he submitted in supported of his motion. See ECF No. 59-2. Jones has made no such showing. His declaration only denies conduct that he is not alleged to have engaged in, and denies knowledge of information that he is not alleged to know. Specfically, Jones asserts that he "was not at the scene of the Incident, ha[s] not inspected the scene of the Incident, and did not handle any aspect of the investigation," and that he has "no firsthand knowledge of the Incident, the facts giving rise to the Incident, or specific information about the investigation of the Incident." Id. at 3 ¶ 8. These assertions are irrelevant, since Jones is not sued as a participant in, or witness to the shooting, nor as a person who conducted the investigation.

Defendants do not even argue that plaintiff's deposition request is intended to or would annoy or harass. Defendants do argue, however, that "Chief Jones is an extremely busy person." ECF No. 59-1 at 15 ¶ A. In support, defendants assert that "Stockton is California's 13th largest

1  city, and the 63th largest city in the entire country, with a population of over 300,000. Chief
2  Jones presides over a large, urban police department with over 400 sworn officers and over 150
3  civilian personnel." Id. According to Chief Jones's declaration, he works very long hours and
4  travels for business. ECF No. 59-2 (Declaration of Eric Jones ("Jones Decl.")) at 3 ¶ 11.
5  "Preparing for and attending a deposition in this matter, for which I have no personal knowledge
6  to contribute and do not understand why Plaintiff's counsel even wishes to take my deposition,
7  would be burdensome for my already packed schedule." Id.
8      A busy schedule is not sufficient to meet defendants' Rule 26(c) burden, and is an
9  insufficient basis for precluding a deposition even under the "apex" doctrine. See Finisar Corp. v.
10 Nistica, Inc., 2015 WL 3988132 at *2, 2015 U.S. Dist. LEXIS 85107 at *6 (N.D. Cal. 2015)
11 (granting defendant's motion to compel the deposition of non-party Eitan Gertel, Finisar's CEO,
12 the court states that "[a] claimed lack of knowledge, by itself, or the fact that the apex witness has
13 a busy schedule, are both insufficient bases to foreclose otherwise proper discovery"); Kennedy v.
14 Jackson Nat. Life Ins. Co., 2010 WL 1644944 at *1, 2010 U.S. Dist. LEXIS 47866 at *2 (N.D.
15 Cal. 2010) (denying protective order despite "the busy schedule of Manning, a high-ranking
16 executive"); CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) ("the fact that the witness
17 has a busy schedule is simply not a basis for foreclosing otherwise proper discovery").
18     Jones's busy schedule is not "good cause" to preclude his deposition.
19     B.  Personal Knowledge
20     Meanwhile, plaintiff has made a persuasive showing that Jones has personal information
21 relevant to this lawsuit. To begin with, plaintiff alleges:

22
> As Chief of Police, Defendant Jones is responsible for oversight of SPD, including the training and supervision of SPD officers and maintaining, promulgating, and *implementing policies and practices regarding the use of force ... by SPD officers*.

23

24

25 Second Amended Complaint ("Complaint"), ECF No. 38 at 3 ¶ 11 (emphasis added). Plaintiff
26 has submitted, as evidence of this allegation, a "General Order," purporting to be authored by
27 Jones on January 26, 2016, regarding "Officer-Involved Shooting / Shooting Review Board."
28 ECF No. 60 at 57-58 (Declaration of Lori Rifkin ("Rifkin Decl."), Exh. M). In any event,

5

defendants have not denied that Jones is the person who implements policies regarding the use of force by Stockton police officers. Moreover, given the fact that Jones is the author of the officer-involved shooting policy adopted after the shooting at issue here, it is reasonable to infer that he was responsible for whatever officer-involved shooting policy existed at the time of the shooting, or for the lack of such a policy.

Plaintiff further alleges:

> On information and belief, Defendant City of Stockton and Defendant Jones were aware of serious problems with SPD's use of force, including deadly force, in connection with vehicle stops, and failed to take appropriate actions to address and remediate these problems.

Complaint at 8 ¶ 51. Specifically:

> On information and belief, SPD has a significant history of problematic officer-involved shootings and excessive force in connection to vehicle stops, including the shooting and killing of an unarmed African-American man, Luther Brown Jr., and the beating and death of another unarmed African-American man, James Cooke, both in early 2012.

Complaint at 7 ¶ 50. Also,

> Defendants City of Stockton and Chief of Police Jones permitted a policy, custom, and/or practice of conscious disregard of and reckless indifferent to constitutional rights.

Complaint at 8 ¶ 58.

None of these allegations claim that Jones has any personal knowledge of the shooting at issue. Yet they all address Jones's own personal conduct or personal knowledge. Specifically, the allegations address Jones's own personal knowledge of serious problems – problems of constitutional dimension – with his officers' use of deadly force against unarmed African-American men during vehicle stops. They address Jones's own failure to address and remedy the alleged constitutional violations being carried out by his own officers. They address his own implementation (or failure to implement) a policy regarding use of force prior to the shooting.

These allegations are central to plaintiff's case against the City, whose liability hinges upon the existence of a policy that caused the alleged constitutional violation. See, e.g., Monell v. Dept. of Soc. Services of City of New York, 436 U.S. 658, 691 (1978) (municipal liability can

1 exist only if "action pursuant to official municipal policy of some nature caused a constitutional
2 tort"); Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (requiring "a plaintiff seeking
3 to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom'
4 that caused the plaintiff's injury").

5      The allegations are also central to plaintiff's case against Jones in his individual capacity.
6 See, e.g., Blankenhorn v. City of Orange, 485 F.3d 463, 485 (9th Cir. 2007) ("Chief Romero can
7 be held liable in his individual capacity for his own culpable action or inaction in the training,
8 supervision, or control of his subordinates; for his acquiescence in the constitutional
9 deprivation[;] or for conduct that showed a reckless or callous indifference to the rights of
10 others") (internal quotation marks omitted); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th
11 Cir. 1991) ("Supervisory liability is imposed against a supervisory official in his individual
12 capacity for his own culpable action or inaction in the training, supervision, or control of his
13 subordinates") (internal quotation marks omitted).

14      The evidence placed before the court on this motion tends to show that Jones had, or at
15 least might have had, a direct hand in the training, supervision and control of his own police
16 officers. According to Jones's own declaration, he was, at one time, "a Field Training Officer
17 and Departmental Instructor" for the Stockton Police Department. ECF No. 59-2 (Jones Decl.)
18 at 2 ¶ 2. Plaintiff is entitled to find out if Jones directly trained officers on the use of force, and to
19 question him about that training.

20      According to evidence plaintiff submitted, Jones is the author of a post-shooting Stockton
21 Police Department policy on officer-involved shootings. ECF No. 60 at 57-58 (Rifkin Decl.
22 Exh. M). Plaintiff is entitled to find out what policy was in effect at the time of the shooting, why
23 Jones implemented the current (and the previous) policy, whether Jones considered the effects of
24 his policies on his officers' use of force against unarmed civilians, and all other matters relating to
25 the policy that Jones would know about personally.

26      Plaintiff further alleges:

27           On information and belief, neither Defendant Chief Jones nor any
          other SPD supervisor disciplined Defendants or take any corrective
28           action with regard to the actions of Defendants in this incident.

7

1  Complaint at 7 ¶ 49.

2  According to evidence plaintiff submitted, Jones is the person who is authorized to
3  recommend discipline of his officers to the City Manager.  ECF No. 60 at 60 ((Rifkin Decl.,
4  Exh. M).  Plaintiff is entitled to find out why Jones decided not to discipline the officers involved
5  in this case, and in any prior incidents involving use of force.  If, as defendants seem to be
6  arguing, Jones was too busy to concern himself with the shootings of unarmed African-American
7  men by his officers, or perhaps all shootings of unarmed civilians, then plaintiff is entitled to
8  question him about his priorities, and what message that might be communicating to his officers.

9  According to evidence plaintiff submitted, Jones was briefed on the shooting by his
10 deputy and by the District Attorney.  ECF No. 60 at 51-55 (Rifkin Decl., Exhs. K, L).  Plaintiff is
11 entitled to find out whether such briefings have occurred after past incidents, what effect these
12 briefings had on Jones, and what action, if any, Jones took to remedy the alleged constitutional
13 violations revealed in those briefings.[4]

14 Defendants' assertion that Jones has no knowledge relevant to this case is therefore not
15 well taken.

16    C.  Exhaustion & Unique Evidence

17 With the above submissions, plaintiff has shown that plaintiff has personal knowledge of
18 matters relevant to his case.  Moreover, Jones has unique information, since he is the only person
19 who can provide admissible evidence of what he was thinking, why he implemented policies as
20 he did, whether he thought corrective action was needed, why he conducted trainings the way he
21 did, and so on.

22 Defendants are presumably correct that other witnesses can provide information about
23 policies were in effect, which training sessions Jones conducted, and the like.  However, critical
24 information exists only inside Jones' head, and no exhaustion of other witnesses is likely to get at
25 that information.

26

---

27 [4] The undersigned's examples of questions and issues is not intended to limit the areas, issues or
   questions that plaintiff may explore in deposing Jones.  The examples given are just some of the
28 most obvious questions that illustrate plaintiff's need to depose Jones.

### D. Cases

Defendants identify two cases where plaintiffs were denied the opportunity to depose high-ranking police officer defendants because of the "apex" doctrine. Both are readily distinguishable from this case, on the facts.

#### 1. K.C.R. v. County of Los Angeles

In K.C.R. v. County of Los Angeles, 2014 WL 3434257, 2014 U.S. Dist. Lexis 98279 (C.D. Cal. 2014), plaintiff was shot by defendant police officer Silva. Plaintiff alleged that Undersheriff Paul Tanaka, also a defendant, had fostered a culture of violence by encouraging deputies "to use excessive or unreasonable force," and "'threatened retaliatory investigations and discipline against captains and supervisors who attempted to investigate deputy misconduct.'" Plaintiffs further allege that "that Tanaka gave a speech at Century Station, where Silva would later be based, in which he encouraged deputies to 'function right to the edge of the line' and be very aggressive in using force against citizens." K.C.R., 2014 WL 3434257 at *2, 2014 U.S. Dist. Lexis 98279 at 5-6 (some internal quotation marks omitted). Plaintiff alleged that it was that culture of violence that caused Silva to shoot him.

The court held that "Plaintiffs must show at least some evidence of a causal connection between Tanaka's alleged wrongful conduct and Silva's shooting of Rivera in 2012, before Tanaka's deposition may proceed." K.C.R., 2014 WL 3434257 at *4, 2014 U.S. Dist. LEXIS 98279 at *12. Plaintiffs failed to produce the evidence, and the court denied the discovery.

Even assuming that this is the correct standard to apply,[5] plaintiff has met it in this case for the reasons set forth above. Here, plaintiff has shown that Jones authored the officer-involved shooting policy, that he trained his officers in an earlier capacity, that he was provided briefings of the shooting, and that it was his responsibility to recommend discipline. In K.C.R., the court implicitly concluded that it could not infer that the defendant acted according to a "culture of violence." Here, it is entirely reasonable to infer that the police acted according to policy, indeed,

---

[5] Proof of a causal connection between the Police Chief's conduct and plaintiff's injury is the proof needed to establish *liability*. See, e.g., Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995) (under § 1983, a police chief may be liable "if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation").

it may well be a part of their defense in this case. Since plaintiff has submitted evidence that Jones personally wrote the policy, plaintiff has met even the K.C.R. standard.

### 2. Avalos v. Baca

In Avalos, plaintiff alleged that he was "over-detained" by sheriff's deputies and then coerced into waiving his rights. The magistrate judge denied Sheriff Baca's motion for a protective order because "Sheriff Baca … is the official with ultimate responsibility for prisoners' safekeeping while in the city jails." Avalos, 2006 WL 6220447 at *1, 2006 U.S. Dist. Lexis 79376 at *3.

The district judge overturned the magistrate judge's decision under the apex doctrine. The court stated that "[h]eads of agencies and other top government executives are normally not subject to deposition," and plaintiff did not establish a narrow exception to this rule. Specifically, there was no basis for thinking that Sheriff Baca had any knowledge, and plaintiff had not sought the information he wanted from other sources.

Here, as discussed above, Jones is the person with knowledge of why he did not recommend discipline for the officers, why he did not recommend discipline for the officers involved in prior incidents, why he later wrote a policy on officer shootings, and what was his response to the two memos he received about this shooting. Also, plaintiff here has already conducted quite a bit of discovery directed to lower-level officials, and has already deposed the officers involved in the shooting.

## V. CONCLUSION

For reasons set forth above, IT IS HEREBY ORDERED that defendants' motion for a protective order (ECF No. 59) is DENIED.

DATED: March 24, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE